UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| TODD D. LINSON,<br><br>Plaintiff,<br><br>vs.<br><br>JOSH KLIMEK, TAMMY DEJONG,<br><br>Defendants. | 4:16-CV-04167-RAL<br><br>OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

Plaintiff Todd D. Linson ("Linson"), an inmate at the Mike Durfee State Prison ("MDSP"), filed this lawsuit alleging various state officials had deprived him of rights guaranteed to him under the Constitution of the United States. Doc. 1. Pursuant to 28 U.S.C. § 1915A, this Court granted Linson leave to proceed in forma pauperis and dismissed certain claims and defendants from this suit at the screening stage. Doc. 13. That opinion and order preserved Linson's claim of access to the courts based upon alleged interference with his participation in his divorce proceedings and a First Amendment claim based upon an alleged inability to utilize the MDSP grievance process. Doc. 13 at 5–9. This Court also retained Josh Klimek ("Klimek") and Tammy Johnson DeJong ("DeJong"), as defendants (collectively "Defendants"). Doc. 13 at 11. Subsequently, Defendants moved for summary judgment on Linson's remaining claims. Doc 26. For the reasons stated below, this Court grants Defendants' motion for summary judgment.

1

I.  **Facts Not Subject to Genuine Dispute[1]**

Linson is currently in the custody of the South Dakota Department of Corrections and housed at MDSP. Doc. 32 at ¶ 1; Doc. 36 at ¶ 1. Klimek is a Unit Manager at MDSP and has been employed by the South Dakota Department of Corrections for approximately 12 years. Doc. 30 at ¶ 2. DeJong is a Case Manager at MDSP and has been an employee of the South Dakota Department of Corrections for approximately 21 years. Doc. 28 at ¶ 2.

Linson was served with a pro se divorce complaint filed by his then wife Rebekka Linson ("Rebekka") in early August of 2016. Doc. 1 at ¶ 6. In a letter to the judge assigned the divorce case, Judge Lawrence E. Long, dated October 31, 2016, Linson explained that he had received a no-contact order from Rebekka and advised that he would not contest the divorce if the court would award him the following property: "1) 1990 Volvo S-70, wrecked, inoperable[] (already titled in my name); 2) All personal items including[] clothes, paperwork, Sentry Fire Safe and contents; 3) All tools, [h]and and power, used for defendant[']s job, with most provided by my employer." Doc. 31-1 at 1. Linson further stated that Rebekka could have all other property, and acknowledged receipt of notice of a November 15, 2016, hearing for which he requested permission to appear in person or by remote means such as telephone or video conference. Doc. 31-1 at 1–2. Linson also provided a proposed stipulation agreement which would have awarded him the following property:

1) 1999[2] Volvo S-70, titled in defendant's name. Wrecked, not operable.

---

[1] The factual background included in this Opinion and Order focuses on the facts relevant to Linson's remaing claims and is primarily derived from the uncontested portions of the Defendants' statement of undisputed material facts, Doc. 32, Linson's statement of disputed material facts, Doc. 36, affidavits of Linson, Klimek, DeJong, and Brittany Ulmer, Docs. 28, 29, 30, 37, and exhibits submitted by the parties.

[2] Linson's letter variously referred to the Volvo S-70 as a 1990 or 1999 Volvo. The reference to a 1999 Volvo probably is a typographical error, as there appears to be a single 1990 Volvo S-70 owned by the Linsons.

2

2) All clothes to include[] pants, shirts[,] shorts, jeans, work wear, jerseys, cold weather gear, shoes, boots, work boots.
3) All sports memorabilia, to include all Detroit Tigers items.
4) All Tools, including hand tools and power tools, and accessories, to include all Porter Cable Multi-pack items.
5) All personal paperwork to include family photos, all United States Army paperwork and veterans' paperwork, Sentry Fire Safe and contents.
6) An order allowing my assigned representative to receive all items listed.

Doc. 31-2. The proposed stipulation agreement was signed by Linson and notarized by DeJong. Doc. 31-2.

Inmates at MDSP who wish to make phone calls are required to make arrangements in advance in order to allow for planning of sufficient staff to assist and supervise the inmate. Doc. 30 at ¶ 5; Doc. 32 at ¶ 5. Inmates who wish to appear at a court hearing via telephone are further required to show the notice they received regarding any such hearing and make their arrangements with prison staff at least a day in advance. Doc. 30 at ¶ 6; Doc. 32 at ¶ 6. According to Linson, he filed a request with Klimek on November 1, 2016, indicating he needed to appear at his divorce proceeding on November 15. Doc. 37 at ¶ 3; see Doc. 35-1 (Linson phone request, dated Nov. 1, 2016). All parties agree that on November 15, Linson requested to make a phone call. Doc. 28 at ¶ 5; Doc. 30 at ¶ 7; Doc. 32 at ¶ 7; Doc. 37 at ¶¶ 3–4. Linson recalls telling DeJong that he needed to call to participate in his court hearing and attempting to show her the notice of hearing. Doc. 36 at ¶ 6; Doc. 37 at ¶¶ 3–4. Linson recalls that DeJong told him to leave her office because it was not "open door." Doc. 36 at ¶ 6; Doc. 37 at ¶ 4. DeJong claims that when Linson requested to make a phone call on November 15, she directed him to make his request with Klimek and denies that Linson informed her that the purpose of the call was to participate in his divorce proceedings. Doc. 28 at ¶¶ 5–6. Klimek also claims that Linson did not inform him that the purpose of the phone call was to participate in his divorce proceedings and denies that Linson made any advance request. Doc. 30 at ¶¶ 7–8; Doc. 32 at ¶¶ 7–8. Linson says that he had no interaction with Klimek

3

on November 15, 2016, and that Klimek makes himself unavailable to his unit despite being Unit Manager by vacating the unit and spending his time elsewhere. Doc. 36 at ¶¶ 7–8; Doc. 37 at ¶ 2.

Judge Long entered a default Judgment and Decree of Divorce on November 15, 2016, which divided the property between Linson and Rebekka as follows:

> The parties shall retain as their separate property all of the vehicles, personal clothing and effects, all household goods, appliances and such other items and personal property as are currently in their respective possessions.
>
> In addition the Plaintiff [Rebekka] shall be awarded the following property: the 2005 Chevrolet Impala [and] the 1990 Volvo VIN YVIL553DIX2569080.

Doc. 31-3 at 1.

Linson recalls approaching DeJong approximately one hour after being denied use of the phone to request a grievance form and being told he could not have one because he could not grieve prison policy. Doc. 36 at ¶ 21; Doc. 37 at ¶ 10. DeJong denies that Linson requested a grievance form from her. Doc. 28 at ¶ 7. Defendants claim Linson requested an Informal Resolution Request Form from Brittany Ulmer, a unit coordinator at MDSP, on November 15 and filled it out and dated it November 16, 2016. Doc. 29 at ¶ 6; Doc. 32 at ¶ 21. Linson responds that he did not receive this form until November 16, 2016. Doc. 36 at ¶ 21. Defendants also claim that DeJong is not involved in the grievance process, Doc. 28 at ¶ 7; Doc. 32 at ¶ 15, but Linson claims prison policy mandates DeJong, as part of the prison unit team, provide grievance forms to inmates upon request, Doc. 36 at ¶ 15.

## II. Discussion

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." On summary judgment, the evidence is "viewed in the light most favorable to the nonmoving party." True v. Nebraska, 612 F.3d 676, 679 (8th Cir. 2010)

4

(quoting Cordry v. Vanderbilt Mortg. & Fin., Inc., 445 F.3d 1106, 1109 (8th Cir. 2006)). There is a genuine issue of material fact if a "reasonable jury [could] return a verdict for either party" on a particular issue. Mayer v. Countrywide Home Loans, 647 F.3d 789, 791 (8th Cir. 2011). A party opposing a properly made and supported motion for summary judgment must cite to particular materials in the record supporting the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007). Summary judgment is not "a disfavored procedural shortcut, but rather . . . an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

### A. Access to Courts

Linson claims that he was deprived of his constitutional right of access to the courts when Defendants prevented him from using the phone to participate in his divorce proceedings. Doc. 1 at ¶¶ 6–19. Defendants argue that Linson's claim fails because he was not denied access to the courts in order to challenge his sentence or conditions of confinement, and that even if he did have a right to appear at the divorce proceedings he was not denied that right because Linson failed to follow prison policy regarding phone calls. Doc. 31 at 6–7. Defendants also argue that they would be entitled to qualified immunity because the right to access the courts for divorce proceedings is not a clearly established right.[3] Doc. 31 at 7–8.

---

[3] Defendants also advance an argument before this Court that Linson lacks standing to proceed with this cause of action because "it appears that he received all the property that he was requesting[,]" and that "[b]y the plain reading of the Judgment Rebekka was not awarded the 1999

5

In its previous order in this case, this Court noted that the Supreme Court's decision in Boddie v. Connecticut, 401 U.S. 371 (1971), made the question of Linson's claim regarding access to the courts colorable and thus allowed it to progress past the screening stage. Doc. 13 at 7–8. Boddie recognized that marriage involves "interests of basic importance in our society" and deemed a refusal to allow a person seeking a divorce access to the courts to be a denial of due process. Id. at 376, 380–81. Boddie involved indigent plaintiffs challenging a state law that required the payment of certain court fees to file for divorce, and not an inmate asserting a constitutional right to participate in divorce proceedings as exists here.

An inmate's constitutional right of access to the courts was first recognized by the Supreme Court of the United States in Ex parte Hull, 312 U.S. 546, 549 (1941), when the Court struck down regulations which limited state prisoners from filing habeas corpus petitions. Since that time, a long history of cases has "established beyond doubt that prisoners have a constitutional right of access to the courts." Bounds v. Smith, 430 U.S. 817, 821 (1977). One of the most robust articulations of the right of access occurred in Bounds, which established that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Id. at 828. In the aftermath of

---

Volvo S-10 or the personal items Linson requested." Doc. 31 at 6. This argument is unavailing. The divorce decree awarded to Linson and Rebekka the personal property "in their respective possessions" and gave Rebekka a 1990 Volvo. Doc. 31-3. As Linson points out, he was not in possession of his property due to his incarceration. Doc. 36 at ¶ 25. Moreover, Defendants' assertion that Linson was not harmed because Rebekka was not awarded a 1999 Volvo S-10 [sic] plays with Linson's apparent typographical error in describing the vehicle once as a 1990 Volvo S-70 and once as a 1999 Volvo S-70. Despite the discrepancy in Linson's description of the Volvo between his letter to Judge Long (1990 Volvo S-70) and his proposed stipulation (1999 Volvo S-70), Linson plainly was seeking a Volvo which was awarded to Rebekka, demonstrating actual injury sufficient for standing to proceed with this cause of action.

Bounds, the Court in Lewis v. Casey, 518 U.S. 343 (1996), narrowed the scope of the right of access to the courts. In an opinion authored by Justice Scalia, the Court made clear that Bounds did not establish "an abstract, freestanding right to a law library or legal assistance" but rather emphasized that meaningful access is the touchstone of the constitutional right of access doctrine. Lewis, 518 U.S. at 350. Importantly, the majority specifically disclaimed excerpts in Bounds suggesting that states are required to enable prisoners "to discover grievances and to litigate effectively once in court." 518 U.S. at 354 (emphasis omitted).

The discussion in Lewis regarding the type of legal claims which, when frustrated by the State, may give rise to an access-to-courts grievance is of most importance to Linson's case. The Court pointed out that "[n]early all" of the cases which gave rise to Bounds "involved attempts by inmates to pursue direct appeals from the convictions for which they were incarcerated." 518 U.S. at 354. It was further noted that the Court had "extended this universe of relevant claims only slightly, to 'civil rights actions'—i.e., actions under 42 U.S.C. § 1983 to vindicate 'basic constitutional rights.'" Id. (quoting Wolff v. McDonnell, 418 U.S. 539, 579 (1974)). The Court concluded its narrowing of Bounds with this statement:

> In other words, Bounds does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

Id. at 355 (emphasis in original).

In its previous order, this Court recognized the challenge Linson's claim may face under Lewis, but rejected dismissal at the screening stage because his grievance was not based upon a lack of affirmative assistance from the State—a claim to which Lewis clearly closes the door—

7

but rather the barrier to court access created by Defendants' refusal to allow him to use a telephone to seek to participate in his divorce proceedings. Doc. 13 at 7. However, the Eighth Circuit's jurisprudence on right-of-access claims, derived from the Supreme Court's decision in Lewis, prevents Linson from advancing his claim any further. Recognizing that Lewis lays out the framework for analyzing access-to-courts claims brought by inmates, the Eighth Circuit has held "the right of access to the courts guarantees an inmate the ability to file lawsuits that directly or collaterally attack the inmate's sentence or that challenge the conditions of the inmate's confinement, but it does not extend to the right to 'discover grievances' or to 'litigate effectively once in court.'" Cody v. Weber, 256 F.3d 764, 767–68 (8th Cir. 2001) (quoting Lewis, 518 U.S. at 354–55). "The right of access to the courts is satisfied if the prisoner has the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Zink v. Lombardi, 783 F.3d 1089, 1108 (8th Cir. 2015) (en banc) (per curiam) (citation omitted). Importantly, the Eighth Circuit has specifically held that in order to state an access-to-courts claim, an inmate "must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." Williams v. Hobbs, 658 F.3d 842, 851–52 (8th Cir. 2011).

Linson argues he was deprived of his constitutional right of access to the courts by defendants Klimek and DeJong when they prevented him from participating in his divorce hearing via telephone. Under Eighth Circuit precedent regarding the right-of-access doctrine, his claim cannot survive because he has not alleged or shown that the State prevented him from litigating a claim challenging his sentence or conditions of confinement. Rather, Linson alleges that prison officials prevented him from litigating his divorce which resulted in a loss of his property.

8

Unfortunately for Linson, the principles articulated by the Eighth Circuit in the aftermath of Lewis render his claim to be an "impairment of [an] *other* litigating capacity" that does not give rise to an access-to-courts claim. See Wagner v. Gober, No. 4:15-CV-1789 CAS, 2017 WL 2984841, at *4 (E.D. Mo. July 13, 2017) (finding an inmate had no access-to-courts claim where prison official prevented him from filing divorce papers, resulting in lost property and chance for greater child custody rights); Shaw v. Gibson, No. 5:14CV00139-JM-JJV, 2014 WL 3057407 at *2 (E.D. Ark. June 17, 2014) (finding a prisoner's inability to participate in his divorce proceedings did not create an acces-to-courts claim because prisoner was not attempting to litigate a challenge to his sentence or conditions of confinement).[4]

This Court recognizes the inherent inconsistency that exists when a prisoner who has been prevented from participating in his divorce action—an opportunity which the Supreme Court in Boddie deemed to be a constitutional right, albeit not in the prisoner context—cannot seek recourse in a court of law against the State whose actions prevented his participation. However, this Court must follow the holdings of the Eighth Circuit and the Supreme Court and dismiss Linson's right-of-access claim. Despite the fact that a prisoner may not bring an access-to-courts claim when prevented from litigating a divorce, the staff at MDSP, and indeed at all penal institutions in South Dakota, have little reason or excuse to deny inmates this access. As the Supreme Court has long recognized, "marriage involves interests of basic importance in our society[,]" and an individual cannot dissolve a marriage "without invoking the State's judicial machinery." Boddie, 401 U.S. at 376. Persons who must settle their disputes through the judicial process—and there is no other

---

[4] Several courts outside of the Eighth Circuit also have held that the constitutional right of access to the courts does not encompass litigation involving divorce cases. See, e.g., Dopp v. W. Dist. of Okla., 105 F. App'x 259, 260 (10th Cir. 2004); Wylie v. Montana Women's Prison, No. CV 13-53-BLG-SEH, 2014 WL 1871825, at *2 (D. Mont. May 8, 2014); McIntosh v. Thompson, No. 6:09cv444, 2010 WL 5677139, at *8 (E.D. Tex. Mar. 22, 2010).

mechanism available for the dissolution of marriages—must be given a meaningful opportunity to be heard, "absent a countervailing state interest of overriding significance." Id. at 377. There has been no suggestion that any such overriding interest exists which necessitated the denial of Linson's request to participate in his divorce hearing by telephone, and indeed this Court considers it highly unlikely that there is a viable justification in this case. The provision of a telephone is a relatively minor inconvenience for the State, especially in comparison to the corresponding benefit of allowing inmates the opportunity to present their interests in court proceedings of such personal significance as a divorce. Indeed, a series of state court decisions support allowing inmates to participate in divorce proceedings by telephone, if not in person, particularly when the disposition of property is involved. See, e.g., Wilson v. Wilson, 469 N.W.2d 750, 753 (Neb. 1991) ("We assume, then, that a prison inmate must be given a meaningful opportunity to be heard in responding to a marriage dissolution action."); Payne v. Superior Court, 553 P.2d 565, 568–73 (Cal. 1976) (recognizing that defending one's property in court "is a right of fundamental constitutional dimension" and holding an indigent inmate had been deprived of his due process right of access to the courts when prevented from meaningfully attending his civil suit to present a defense); In re D.D.J., 136 S.W.3d 305, 313–14 (Tex. App. 2004) (holding that all litigants, including inmates, who are "forced to settle disputes through the judicial process have a fundamental right under the federal constitution to be heard at a meaningful time in a meaningful manner") (citation omitted). This Court trusts and expects that those officials charged with the custody of South Dakota's inmate population will bear these interests in mind the next time one of their charges seeks to participate by telephone in a proceeding of such basic importance.

Nevertheless, Linson cannot establish as a matter of law that he has been deprived of his constitutional right of access to the courts based upon a denial by Defendants to allow for his

participation in divorce proceedings. Defendants are therefore entitled to summary judgment on Linson's access-to-courts claim. As Linson fails to establish the existence of a violation of a constitutional right, this Court does not address Defendants' arguments regarding the existence of qualified immunity.

## B. Refusal to Allow Grievance[5]

This Court also preserved Linson's claim against DeJong regarding his inability to access the MDSP grievance procedures. Doc. 13 at 9. However, as with Linson's access-to-courts claim above, DeJong is entitled to summary judgment because Linson has not established that he has been deprived of a constitutional right.

It is clearly established law in the Eighth Circuit that a prisoner has a First Amendment right "to petition for redress of grievances under a prison's grievance procedures." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010). This right protects a prisoner from retaliation by prison officials for use of the grievance process, but does not confer a right to access that process. The Eighth Circuit has previously held there is no liberty interest in access to a prison's administrative remedy procedures. See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam). "When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which

---

[5] In his complaint, Linson indicated he sought a grievance form to complain about the adequacy of the prison law library. Doc. 1 at ¶ 32. Defendants assert that Linson requested an Informal Resolution Request form on November 15 in which he complained about not being allowed to use the phone to participate in his divorce hearing, and has never filed a grievance regarding the prison library. Doc. 32 at ¶¶ 20–21. Linson claims DeJong refused his request for a grievance form on November 15 because he could not grieve prison policy, and that he did not receive the form referenced by Defendants until November 16. Doc. 36 at ¶ 21; Doc. 37 at 10. Thus, it is unclear if Linson was denied a grievance form to grieve the adequacy of the prison library or to grieve the denial of his request to use the phone to participate in his divorce hearing. Because inmates do not have a liberty interest in access to a prison's grievance system, this distinction is irrelevant.

is not compromised by the prison's refusal to entertain his grievance." Id. Assuming the facts in the light most favorable to Linson, the denial by DeJong to provide Linson a grievance form does not constitute the deprivation of a constitutionally protected right. Linson was able to bring his claims before this Court and have them evaluated on the merits, and this right was not compromised by DeJong's refusal to give him a grievance form. DeJong's motion for summary judgment with respect to Linson's claimed inability to grieve issues is granted.

### C. Official Capacity claims

Linson brought suit against the defendants in both their official and individual capacities, seeking injunctive and monetary relief. Because both of Linson's claims which survived screening fail as a matter of law, this Court need not address arguments regarding official capacity.

### III. Conclusion

For the reasons stated above, it is hereby

ORDERED that Defendants' motion for summary judgment, Doc. 26, is granted.

DATED this 8th day of March, 2018.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE